DA 12-0072

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 150N

JOHN DILLEY,

Plaintiff and Appellant,

v.

CITY OF MISSOULA,

Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 11-1228
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John Dilley (self-represented litigant); Missoula, Montana

For Appellee:

James P. Nugent, City Attorney; Susan A. Firth, Chief Civil/
Administrative Attorney, Missoula, Montana

Submitted on Briefs:  June 12, 2012

Decided:  July 10, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      The Fourth Judicial District Court, Missoula County, granted summary judgment to the City of Missoula (City), concluding that the City acted within its legal authority when it purchased the Missoula Civic Stadium (the stadium) with tax increment financing (TIF) funds designated for urban renewal.  Dilley appeals from this order.

¶3      The stadium was originally planned and developed by Play Ball Missoula, Inc. (Play Ball), a volunteer, non-profit corporation organized for the purpose of bringing a minor league baseball team to Missoula.  In 2000, Play Ball and the City entered a development agreement that permitted Play Ball to finance and construct a stadium on blighted City property and later convey the facility to the City.  Financial difficulties and legal turmoil have ensued since.  *See e.g. Fair Play Missoula, Inc. v. City of Missoula*, 2002 MT 179, 311 Mont. 22, 52 P.3d 926.

¶4      Play Ball opened the stadium in 2004, but construction cost overruns, litigation and the economic downturn forced a complicated series of transactions to prevent foreclosure on the property.  *See* Missoulian, *Four loan guarantors say they were misled on Missoula ballpark deal, refuse to pay*, http://missoulian.com/news/local/

2

article_351e91f8-3f3c-11e1-9324-001871e3ce6c.html (January 15, 2012). In accordance with the negotiated transactions, the City agreed to retire the remaining debt encumbering the stadium upon its acquisition, using $2,000,000 in TIF revenue and $1,555,000 in revenue bonds paid off by the lease on the stadium. The assignment and bill of sale for the agreement were completed on February 17, 2012.

¶5 Dilley, a pro se litigant, filed suit prior to the City's acquisition of the stadium, alleging that the planned purchase using TIF funds collected for urban renewal programs pursuant to Title 7, Chapter 15, Part 42 of Montana Code Annotated constituted an illegal payoff of private enterprise debt. Specifically, Dilley argued that the City violated § 7-15-4288, MCA, because the statute does not "allow the payoff of private debt and the satisfaction of private creditors with TIF money. . . ." In issuing summary judgment in favor of the City, the District Court found that § 7-15-4288, MCA, authorized such acquisition of recreational facilities and did not prohibit the City from discharging any debt associated with the property. The court noted that § 7-15-4288, MCA, "provides a broad spectrum of both authority and flexibility for acquiring, preserving and maintaining public infrastructure buildings as well as public improvements[.]"

¶6 Dilley argues on appeal that the District Court erroneously failed to specify which provision of § 7-15-4288, MCA, "permits the payoff of private debt." He also argues that the City cannot make such an expenditure of TIF funds simply because the practice is not specifically prohibited by statute. To the contrary, the City argues that § 7-15-4288(4), MCA, authorizes the use of TIF money to pay for land acquisition, construction, or improvement of infrastructure for "any public improvements authorized by Title 7,

3

chapter 12, parts 41 through 45. . . ." Citing *Fair Play Missoula, Inc.*, the City argues that this Court has already held that the municipal urban renewal powers of incorporated cities are to be liberally construed and allow for the acquisition or construction of recreational facilities.

¶7     Indeed, we held in that case, *inter alia*, that nothing in Montana's statutory provisions regarding municipal acquisition of athletic fields and stadiums, § 7-16-4106, MCA, prevented the City from making the building of a stadium an urban renewal project. *Fair Play Missoula, Inc.*, ¶ 31. While our inquiry in the case reflected the facts as they existed at the time—that the stadium would be entirely financed by Play Ball and donated to the City upon completion—our interpretation of statutes controlling the municipal powers of urban renewal remains unchanged. We held at that time that "the decision to proceed with development [of the stadium] under the urban renewal provisions rests with the City, and we construe the City's powers liberally." *Fair Play Missoula, Inc.*, ¶ 31. Using TIF money to discharge the debt encumbering the stadium in order to effect its acquisition was a proper exercise of city urban renewal powers.

¶8     We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are legal and are controlled by settled Montana law, which the District Court correctly interpreted.

¶9     Affirmed.

/S/ MIKE McGRATH

4

We concur:


/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BETH BAKER
/S/ JAMES C. NELSON